Signed and Filed: January 28, 2014



_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Bankruptcy Case |
| | ) No. 08-32514DM |
| HELLER EHRMAN LLP, | ) |
| | ) |
| Debtor. | ) Chapter 11 |
| _____ | ) |
| HELLER EHRMAN LLP, | ) Adversary Proceeding |
| | ) No. 10-3221DM |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JONES DAY, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

MEMORANDUM DECISION ON MOTIONS FOR SUMMARY JUDGMENT
AND PARTIAL SUMMARY JUDGMENT ON THE VALUE
OF UNFINISHED BUSINESS TO BE RECOVERED

I.   INTRODUCTION

On November 6, 2013, the court heard oral argument on four motions filed by Heller Ehrman LLP ("Heller"), by and through Michael Burkart, plan administrator, for summary judgment (as against one defendant) or partial summary motion (as against three defendants) regarding the valuation of its avoidance claims.  The four motions were directed at defendants Orrick, Herrington & Sutcliffe LLP ("Orrick") (Adversary Proceeding No. 10-3234); Jones Day (Adversary Proceeding No. 10-3221); Foley & Lardner ("Foley")

-1-

(Adversary Proceeding No. 10-3213); and Davis Wright Tremaine LLP

("Davis") (Adversary Proceeding No. 10-3210) (collectively,

"Defendants").[1]  Appearances were noted on the record.

Defendants were all parties to previous motions and the

subject of this court's April 2011 Memorandum Decision on Motion

to Dismiss ("Heller I")[2] and March 2013 Memorandum Decision on

Motions and Cross-Motions for Summary Judgment ("Heller II").[3]

In those decisions, the court held that a prepetition waiver of

Heller's interest in profits realized or to be realized from its

unfinished business ("Unfinished Business")[4] constituted a

fraudulent transfer.  As a dissolved law firm's entitlement to

profits from its unfinished business arises under California law

as determined in *Jewel v. Boxer*, 156 Cal. App. 3d 171, 203 Cal.

Rptr. 13 (1994) ("*Jewel*") and its progeny, the waiver is referred

---

[1] These four adversary proceedings have not been consolidated although the motions were heard and argued together.  This Memorandum Decision is being filed in each of the four adversary proceedings, with changes only in the caption.  Orders disposing of the motions will be separately filed in each of those four actions.

[2] *Heller Ehrman LLP v. Arnold & Porter (In re Heller Ehrman LLP)*, 2011 WL 1539796 (Bankr. N.D. Cal. Apr. 22, 2011).

[3] *Heller Ehrman LLP v. Jones Day (In re Heller Ehrman LLP)*, 2013 WL 951706 (Bankr. N.D. Cal. March 11, 2013).

[4] "Unfinished Business" refers to client matters that were pending but unfinished on the date of Heller's dissolution.  The unfinished business of a law partnership is any business covered by retainer agreements between the firm and its clients for the performance of partnership services that existed at the time of dissolution. *Greenspan v. Orrick Herrington & Sutcliffe (In re Brobeck, Phelger & Harrison LLP)*, 408 B.R. 318, 333 (Bankr. N.D. Cal. 2009), citing *Rosenfeld, Meyer & Susman v. Cohen*, 146 Cal. App. 3d 200, 217, 194 Cal. Rptr. 180 (1983).  It does not, however, apply to business created after dissolution, even if that business comes from a client of the dissolved partnership. *Brobeck,* 408 B.R. at 333

-2-

to as the "Jewel Waiver."

In Heller II, this court held that the Defendants were liable for the avoidable transfer as subsequent transferees, and noted that the only matter left for trial was the calculation of the amount of that liability:

> What remains, therefore, is proof at trial of the extent of Heller's damages, namely the amount earned by Defendants as profit on the unfinished business.

Heller II, 2013 WL 951706 at *14. Thereafter, contending that the damages could be determined as a matter of law and undisputed fact, Heller sought and obtained leave to file the current motions for partial summary judgment against Orrick and summary judgment against Jones Day, Davis and Foley.[5] This Memorandum Decision addresses Heller's Motion For Summary Judgment on the Value of the Unfinished Business Profits to be Recovered directed at Orrick (Docket No. 241 in A.P. No. 10-3234) and three similar Motions for Partial Summary Judgment on the Value of the Unfinished Business Profits to be Recovered directed at Jones Day (Docket No. 249 in A.P. No. 10-3221), Foley (Docket No. 165 in A.P. No. 10-3213), and Davis (Docket No. 196 in A.P. No. 10-3210). Because material facts are in dispute as to the calculation of damages and, for a separate reason, because these facts give rise to application of a principle of unsettled law, the court will deny Heller's motions and the Defendants' cross-motions. It will,

---

[5] Heller is seeking summary judgment in Orrick because it believes that all profits from Unfinished Business brought by Heller to Orrick can be identified. In contrast, Heller acknowledges that disputes exist vis-a-vis the other three Defendants as whether certain work is Unfinished Business or new business, and thus moves for only partial summary judgment against them.

Case: 10-03221   Doc# 286   Filed: 01/28/14   Entered: 01/29/14 09:45:52   Page 3 of 24

however, address legal principles raised in the motions and cross-motions, as well as in the testimony of the various experts: (1) the scope of recoverable damages and any offsets, including the "reasonable compensation" to which the Defendants are entitled under section 1604(h) of the Uniform Partnership Act of 1994 ("RUPA"), set forth in chapter 5 of title 2 of the California Corporations Code; (2) other equitable and legal doctrines relevant to the calculation of
damages; and (3) the burdens of proof borne by the parties.

As discussed in more detail later, the court rejects Defendants' contention that the entirety of the fees received by them with respect to Heller's Unfinished Business constitutes, as a matter of law, "reasonable compensation" which they are entitled to retain under RUPA. It also rejects their argument that the value of the Unfinished Business is minimal to non-existent because Heller would not have been able to complete the Unfinished Business following dissolution. In addition, the court agrees with Heller that Defendants bear the burden of demonstrating the reasonableness of their compensation for completing Heller's Unfinished Business, including the expenses that should be attributable to this work.

On the other hand, the court rejects Heller's contention that, as a matter of undisputed fact, it is entitled to recover the full amount of profits (as measured by Heller's experts) received by Defendants, because they purportedly have not satisfied their burden of demonstrating their "reasonable compensation." Rather, under governing law, Defendants are entitled to recover all direct costs and certain indirect costs of

-4-

completing the Unfinished Business, and the trier of fact must determine the amount of those direct and indirect costs.

In summary, although the amount of fees received by Defendants for completion of Unfinished Business has been established in the confidential portion of the record, questions of fact exist as to the reasonableness of Defendants' compensation and overhead and costs in completing that work.[6] Because the court is not granting Heller's motions, it will not address the question of whether Heller is entitled to pre-judgment interest.[7]

## II.  DISCUSSION[8]

### A.  Previously Decided Issues

Some issues briefed by Defendants (or observed by their experts) have been resolved in Heller I or Heller II and will not be discussed in any detail in this Memorandum Decision.  The court has determined that the Unfinished Business was property of Heller; that Heller was insolvent on the date of the Jewel Waiver;

---

[6] The court does not question, for example, Orrick's reliance on the definition of overhead, namely, a business expense that cannot be allocated to a particular product or service.  It does question Defendants' view that a simple proration of their total overhead is the proper method of assessing reasonable costs attributable to Unfinished Business.  The determination of proper deductible overhead expenses attributable to completion of Unfinished Business is also a question of fact.

[7] Also, because the court is not granting any of the motions or cross-motions, it need not characterize its ruling as recommended conclusions of law.  See Order Denying Motion For De Novo Review filed on May 21, 2013, at Docket No. 7 in Case No. 13-cv-01775CRB in the United States District Court for the Northern District of California.

[8] As stated in *Heller II*, 2013 WL 951706 at n.2, a decision involving competing summary judgment motions does not involve the making of findings of fact.  The court will refer to the facts solely to provide context for its denial of the motions and cross-motions.

-5-

that no reasonably equivalent value was given for what was transferred to the Heller partners who were the beneficiaries of the Jewel Waiver and who later joined Defendants; that each Defendant was an immediate transferee of the Heller partners who received the right to complete the Unfinished Business without having to account for any profits, and thus those Defendants came within the reach of 11 U.S.C. § 550(a)(2); and that none of the Defendants took the Unfinished Business for value, thus depriving them of the safe harbor of 11 U.S.C. § 550(b)(1).

**B.    Overarching Principles Governing Calculation of Damages in Avoidance Actions**

Any damages awarded in these fraudulent transfer avoidance actions should adhere to the Ninth Circuit's repeated admonishment to use a measure that "restore[s] the estate to the financial condition it would have enjoyed if the transfer had not occurred." *USAA Fed. Savings Bank v. Thack (In re Taylor)*, 599 F.3d 880, 890 (9th Cir. 2010); *Aalfs v. Wirum (In re Straightline Invs., Inc.)*, 525 F.3d 870, 883 (9th Cir. 2008). Therefore, the court has discretion "on how to value the property so as to put the estate in its pretransfer position." *Taylor*, 599 F.3d at 890; *Decker v. Tramiel (In re JTS Corp.)*, 617 F.3d 1102, 1111-12 (9th Cir. 2010). This approach is consistent with section 550's "equitable underpinnings" and serves its "primary goal [of] equity and restoration." *JTS Corp.*, 617 F.3d at 1111. Thus, any damages awarded to Heller should not exceed the amount it would have recovered if it had completed the Unfinished Business.

Here, the avoidable transfer was the Jewel Waiver in favor of departing Heller partners of their duties to account for net

-6-

profits from Unfinished Business; the only way to determine the value of the fraudulently transferred rights is to determine the amount of those net profits.[9]  While Heller is not pursuing Defendants under a direct accounting theory, it is pursuing them as subsequent transferees of the avoidable transfers. Consequently, the court must focus on the non-bankruptcy law rights that were surrendered by Heller when the Jewel Waiver was executed, *viz.*, the right to recover profits under RUPA and California state law.[10]  Liability under the fraudulent transfer law here or under well-established partnership principles as considered in *Coudert*, are two sides of the same coin.

**C.  Heller's Right to Recovery under RUPA and *Jewel v. Boxer***

Under *Jewel,* 156 Cal. App. 3d at 171, a dissolved law firm's pending unfinished business is a partnership asset.  Such unfinished business includes matters in progress but not completed when the firm is dissolved, regardless of whether the firm was

---

[9] Jones Day also argued that the proper course for the court to take at this point is simply to set aside the Jewel Waiver and let Heller start all over again.  The court rejects that suggestion without any extended discussion because, as noted above, the best measure of the value of the property rights transferred by the Jewel Waiver is the Unfinished Business itself.

[10] In *Heller II*, the court cited *Development Specialists, Inc. v. Akin Gump Strauss, Hauer & Feld, LLP (In re Coudert Brothers LLP),* 480 B.R. 145 (S.D.N.Y. 2012) ("*Coudert-2012*"), for the proposition that law firms joined by former partners of the Coudert Brothers bankrupt law firm had a duty to account for unfinished business.  *Heller II*, 2013 WL 951706 at *4.  The duty to account for profits earned on Coudert's unfinished business arose as that business was completed and the fees were earned. Because the actions involved in completing that business were within the scope of the business of the defendant law firms those partners joined, the firms themselves were jointly liable for an accounting, and there was no need to join the individual partners as defendants.

-7-

retained to handle the matters on an hourly or a contingency fee basis. *Brobeck,* 408 B.R. at 333, citing *Rothman v. Dolin*, 20 Cal. App. 4th 755, 759, 24 Cal. Rptr. 2d 571 (1993). The *Jewel* court rejected a quantum meruit approach to allocating fees from post-dissolution unfinished business among the former partners and remanded for the trial court to allocate the post-dissolution income in accordance with the partners' respective percentage interests in the dissolved firm. In doing so, the *Jewel* court acknowledged that it was "*net* post-dissolution income, not gross income, that is to be allocated to the former partners." *Jewel*, 156 Cal. App. 3d at 179 (emphasis in original). Thus, the former partners working on the unfinished business were entitled to reasonable overhead expenses (excluding partners' salaries) attributable to the production of the post-dissolution income.

The *Jewel* court applied the Uniform Partnership Act then in place, which did not permit compensation to partners (unless they were "surviving" partners) for winding up partnership business. *Jewel*, 203 Cal. Rptr. at 17 ("The Uniform Partnership Act unequivocally prohibits extra compensation for post-dissolution services, with a single exception for surviving partners"). Since *Jewel* was decided, California has adopted RUPA, which now allows *any* former partner to recover reasonable compensation when completing or winding up partnership business. Cal. Corp. Code § 16401(h).[11] Because RUPA entitles partners of a dissolving firm to

_____

[11] RUPA § 16404(b)(1) imposes a fiduciary duty on former Heller partners to account to the partnership and hold as trustee any property, profit or benefit derived by the partner in the conduct and winding up of the partnership business or derived from a use by the partner or partnership property or information,

-8-

reasonable compensation for services rendered in winding up the business of the partnership, "there is no basis to require [Heller's] former partners to remit all profits earned from former [Heller] matters to the [Heller] estate." *Geron v. Robinson & Cole LLP*, 476 B.R. 732, 744 (S.D.N.Y. 2012). Rather, since the former partners are entitled to reasonable compensation for their work, Defendants completing the Unfinished Business are likewise entitled to deduct reasonable compensation and costs from the gross fees received.

### D. Defendants' Arguments

#### 1. There are No Cognizable Damages Because of Heller's Inability to Complete the Work

Defendants contend that the court should value Heller's Unfinished Business at zero as it was unable to complete the work at the time of the fraudulent transfer. The court disagrees, because *Jewel* and the cases following it would be rendered meaningless were that the law. If inability to perform the work was a defense to liability, no partner could seek an accounting from a former partner upon dissolution of a firm.

The *Coudert* bankruptcy court rejected similar arguments by law firms that retained former Coudert partners and took over representation in Coudert's unfinished matters.[12] In doing so, it

_____

including the appropriation of a partnership opportunity. As noted above, § 16401(h) entitles that partner to reasonable compensation for services rendered in winding up the business of the partnership.

[12] Before the Supreme Court issued *Stern v. Marshall*, 131 S.Ct. 2594 (2011), and before the District Court for the Southern District of New York withdrew the reference of the various Coudert unfinished business adversary proceedings, the Coudert bankruptcy court denied various motions to dismiss filed by defendant law

Case: 10-03221   Doc# 286   Filed: 01/28/14   Entered: 01/29/14 09:45:52   Page 9 of 24

held that while a dissolved law firm's historic performance is
relevant to the measure of damages, its inability to complete the
work as of the date of dissolution is irrelevant.  The *Coudert-BK*
court was not persuaded by the defendant law firms' contention
that it should take "into account the particular condition of
Coudert at the time, which is that Coudert was in dissolution and,
a fortiori, could not continue the legal representation."

> I don't agree with the [defendants'] second contention,
> which is that because Coudert was going out of business
> there could not have been any value to the firm of its
> unfinished business (rather, indeed, according to the
> movants, such unfinished matters would have presented
> potential malpractice liability to a firm that could not
> staff them). *That approach would again mean that the
> cases that have applied the unfinished business doctrine
> in the context of dissolved law firms were engaging in
> an exercise of pointless deliberation when, instead,
> they could have easily dismissed the claim on the basis
> that the firm was in dissolution and, therefore, that
> the matter could have had no value to it because the
> firm could not have served the client.* But, of course,
> the unfinished business rule applies to firms in
> dissolution, in keeping with New York Partnership Law
> Section 43.1, which applies specifically to firms in
> liquidation.  Therefore, I do not believe that the fact
> that Coudert was in dissolution would justify granting
> the defendants' motion to dismiss [plaintiff's]
> unfinished business claim.

*Coudert-BK* at pages 49-50.  This court agrees.  Heller's cessation
of business at the time of the Jewel Waiver is irrelevant to the
issue before the court on the present motions.

### 2. **"Reasonable Compensation" Is Equivalent to 100% of Fees Recovered on the Unfinished**

firms.  *See* Modified Bench Ruling on Motions to Dismiss issued on
August 7, 2009, in *Development Specialists, Inc. v. Akin Gump
Strauss* Hauer & *Feld LLP (In re Coudert Brothers LLP) ("Coudert-
BK")*, Adversary Proceeding No. 08-1490 (Bankr. S.D.N.Y. Aug. 7,
2009), available at Docket No. 29 and also available at
http://www.nysb.uscourts.gov/content/re-08-01490-rdd-development-s
pecialists-inc-v-akin-gump-strauss-hauer-feld-llp.  While *Coudert-
BK* is dated August 7, 2009, it was filed on January 19, 2010, and
entered as a separate docket entry on November 10, 2011.

-10-

**Business.**

Like Defendants here, the *Coudert-2012* defendants contended that the bankruptcy estate of the dissolved law firm could not recover anything because all post-dissolution profits were attributable to the "efforts, skill and diligence" of the former Coudert partners and their new firms, and thus no net income was realizable. The *Coudert-2012* court succinctly responded: "That is not at all apparent." *Coudert-2012*, 480 B.R. at 175. The same is true here, at least for the purposes of these motions. As the *Coudert-2012* court explained:

> Lest there be any doubt: this court cannot blithely assume that the profits attributable to the former Coudert partners' post-dissolution 'efforts, skill and diligence' are equal to the profits realized by the firms for completing the Client matters.

*Id.* at 177-178.

Defendants' position is, in essence, that there are no net profits on the Unfinished Business which are recoverable by Heller. With some variation in how Defendants present their arguments and in how their several experts structure their analyses to reach their ultimate opinions, the court distills those theories down into a simple "No Profits" proposition that it categorically rejects. According to Defendants, the Unfinished Business profits equal revenue <u>less</u> compensation paid to shareholders/partners, <u>less</u> compensation paid to non-owner employees, <u>less</u> operating costs. Thus, they opine, there was no profit and thus, nothing for Heller to recover.

Those experts identify numerous categories of what they deem permissible costs, including, in some instances, political contributions, advertising, business development, professional

-11-

1  development, payments to retired partners, charitable

2  contributions and summer associate programs.

3      One common characteristic of the Defendants' expert reports

4  is that there is no correlation between categories of expenses

5  such as those listed above and the completion of any particular

6  matter or aggregate of matters of Unfinished Business.  Rather,

7  there is the pervasive notion that all expenses incurred by the

8  Defendants, including indirect expenses and regardless of how

9  remote they are from the direct and indirect expenses of

10  completing any Unfinished Business, should be charged against

11  revenues, then further reduced by distributions to partners,

12  resulting in no profit.

13      Further, all of the Defendants and their experts expend a

14  great deal of effort describing how they choose to distribute

15  their firm profits to their members.  Again, without being

16  specific, there are generalized intangible factors such as

17  adherence to core values, client relationships and management,

18  commitment to the firm, professional achievement, loyalty,

19  leadership, and similar qualities.  While these are no doubt

20  important factors within the management of any particular firm,

21  they fail as a matter of law to provide evidence of the reasonable

22  compensation RUPA would allow for completion of Unfinished

23  Business.

24      Another common theme of all of the Defendants and their

25  experts is to justify not only their firms' prominence (not

26  disputed by Heller or the court) and the notion that their billing

27  rates are commensurate with the market and acceptable to their

28  respective clients.  Stated otherwise, the overriding philosophy

-12-

seems to be that since billing rates are "market rates" there could never be any damages recovered by Heller since those rates produce a basis from which to charge expenses and leave the remaining amounts as reasonable compensation to the partners. In other words, their defense is what we charged is pre se reasonable, therefore we earned no profit. Putting it bluntly, yet mildly, this theory is as far-fetched as Heller's Take-It-All approach.

The court will not presume that the legislature intended in RUPA that there could be no liability because as a matter of law, market billing rates were per se reasonable expenses for completing Unfinished Business. So too under the fraudulent transfer laws. Reasonable compensation to the partners is not the same as reasonable compensation for completion of the Unfinished Business.

Similarly, the particular compensation of any member of Defendant, or in particular of any member who previously was at Heller, is of no relevance to the issues before the court. Therefore, any conclusions about how a former Heller member's compensation level at Heller compared with his or her compensation level at Defendant, while interesting, has nothing to do with the critical issues of whether any Defendant realized a profit on Heller's Unfinished Business.

For the same reason, discussions by experts about software programs the Defendant firms use to allocate compensation and other costs is not helpful. No doubt those programs assist Defendants' management in determining the profitability of an office, or a particular partner, or a particular matter, and are

-13-

effective management tools, but they do not answer the question of whether particular expenses were reasonable and necessary to complete a matter or matters of Heller's Unfinished Business.[13]

One expert rejected Heller's claims to recover profits on Unfinished Business because he felt that the value derived from that Unfinished Business is a product of personal goodwill, expertise and effort expended by one of Defendants. His view that Heller's damage calculations rest entirely on the fiction that the Heller estate owned the collective, individual personal goodwill of its former shareholders, is not the point. The Jewel Waiver was a fraudulent transfer and the sole issue here is to determine what Defendants must pay as subsequent transferees of that transfer. While it may be so that various intangibles were relevant to successful completion of Unfinished Business, and indeed other work was created and maintained as a result of Defendants' expenditures on such things as offices, recruiting, training, marketing, branding, opening new offices and so on, RUPA more narrowly instructs that the only proper offset against Unfinished Business revenue is the reasonable compensation for the services rendered in winding up the business of Heller. It does not include such unrelated items as building the firm, marketing, training and branding.

In response to Defendants' experts, Heller's own expert, Mr. Regan, takes issue with many of he approaches taken by those experts. For example, he quite properly challenged one of the

---

[13] One expert took exception to positions taken by Heller in this litigation because of a position it took in the *Brobeck* bankruptcy. That also is irrelevant and will not be discussed further.

-14-

Defendant's expense of recruiting fees of six figures to acquire Heller's partners as a cost to charge against Unfinished Business. He also questioned one of the expert's treatment of associate time in that no non-billable work was charged to determine the proper compensation that should be attributable to Unfinished Business.

That being said, Mr. Regan's own analysis was questioned by several of Defendants. And the court believes that general observations such as partner time being "excessive" is an imprecise analysis. So too are Mr. Regan's other particular criticisms of specifics, as are Defendants' criticisms of his positions.

To summarize, some expenses simply cannot, as a matter of law, constitute charges against the costs of completing Unfinished Business. The most glaring example is the charge for the legal recruiter for locating former Heller partners. Similarly, the court can see no connection between expenses such as political contributions, payments to retired firm members, charitable contributions, new business development, advertising, costs involved in opening new offices in other locations, and similar broad expenses that are not likely to have any bearing on the completion of Unfinished Business. That being said, to the extent Defendants at trial can link the cost of such items as additional lawyer and non-lawyer employees, professional training, space, travel and expenses pertaining to Unfinished Business, those categories would appear to be proper. They have not been linked as yet.

Falling in between the obvious related expenses and those that can have no conceivable bearing on completion of Unfinished

-15-

Business, are charges relating to completion of pro bono matters that the particular Defendant took from Heller. If there is proof that a Defendant had to complete pro bono projects as part of the cost of obtaining Heller partners who brought fee-producing Unfinished Business, such a charge may be an acceptable credit. At trial these connections should be demonstrated by the experts and it is up to the trier of fact to determine whether such a connection is accepted.

As with the other issues, these matters should be examined under the prism of cross-examination and do not justify summary judgment for either side.

**E. Heller's Contentions**

Heller advances a "Take-It-All" theory of recovery. Heller has requested recovery of all fees collected by Defendants on Unfinished Business, asserting that they have not carried their burden of demonstrating their entitlement to "reasonable compensation." The court rejects this position outright; as discussed previously, issues of fact exist as to the amount and nature of Defendants' reasonable compensation and costs. And even if the court excluded all of Defendants' evidence, Heller has still not proven that it should Take-It-All.

Moreover, an award of damages under section 550 should "restore the estate to the financial condition it would have enjoyed if the transfer had not occurred." *Taylor*, 599 F.3d at 890; *Straightline,* 525 F.3d at 883. This court should thus "value the property so as to put the estate in its pretransfer position." *Taylor*, 599 F.3d at 890.

As the Ninth Circuit stated in *Taylor*: "[A] bankruptcy court

-16-

ordinarily determines the value of the property to be the value at the time of the transfer, but has discretion on how to value the property so as to put the estate in its pretransfer position." *Id. See also Joseph v. Madray (In re Brun),* 360 B.R. 669, 674 (Bankr. C.D. Cal. 2007) ("Typically, courts equate 'value' with the fair market value of the subject property at the time of the transfer."). Certainly, courts can award the value of property measured at the time of recovery where the property naturally increases in value. *Taylor*, 599 F.3d at 890. Here, however, there is little doubt that most, if not all, of the post-dissolution Unfinished Business income stream resulted from the efforts and capital of the Defendants; the Unfinished Business did not simply appreciate in value. Thus, when ascertaining the value to be recovered by Heller, the trier of fact will necessarily take into account the amounts ultimately recovered by Defendants for completing the Unfinished Business. In other words, the post-dissolution fees charged and collected by Defendants are probative of value, even if they are not conclusive.

Each Defendant may have significantly lower or higher profit margins than Heller would have experienced had it completed the work. The *Coudert-BK* court held that unfinished business damages should be measured by "the potential value of the unfinished representation to a firm with Coudert's characteristics and not to, for example, a firm that had materially lower or higher profit margins." *Coudert-BK* at 49 (emphasis added). "Rather, again, the ultimate determination will be a fact based analysis, perhaps assisted by expert testimony, as to the objective projected net present value of the pending unfinished matter on the firm's

-17-

dissolution date, based on the hypothetical continuation of the matter to its reasonably anticipated completion by an ongoing firm with [debtor's] characteristics." *Id.* That is the approach that must be taken here as well.

A limitation of recovery to the amounts and profit margins that a dissolved law firm would have received had it completed the work complies with the Ninth Circuit's oft-repeated principle that that damages under section 550 should "restore[s] the estate to the financial condition it would have enjoyed if the transfer had not occurred." *Taylor*, 599 F.3d at 890. It also serves the twin goals of "equity and restoration." *JTS Corp.*, 617 F.3d at 2010. Thus, any damages awarded to Heller should not exceed the amount it would have recovered if it had completed the Unfinished Business. In other words, Heller is entitled to what the trier of fact determines to be the objective net value of the Unfinished Business, based on the hypothetical continuation of that business to completion by an ongoing firm with Heller's characteristics. Otherwise, it would be the beneficiary of an unwarranted benefit, particularly as the post-dissolution income stream resulted from the efforts of Defendants.

Heller's alternative to its Take-It-All theory is that the court should make some sort of equitable adjustment to the gross collections on Unfinished Business as suggested by Mr. Regan. Even if such a result would be proper at trial, doing so now would be appropriate. Defendants are entitled to a trial on this theory just as they are on Heller's principal theory.

**F. Burden of Proof**

The court agrees with Heller that Defendants have the burden

-18-

of establishing their entitlement to reimbursement of their "reasonable compensation" or "overhead expenses. *See, e.g., Jewel*, 156 Cal. App. 3d at 181 (discussing burden of former partners "to seek reimbursement and introduce evidence of their overhead expenses"); *Rosenfeld v. Cohen*, 191 Cal. App. 3d 1035, 1050-51 (1987) (holding former partners had failed to meet "the burden of establishing that data, and upon their failure to do so, a computation may be made on the basis of gross receipts"); *Chazen v. Most*, 209 Cal. App. 2d 519, 523 (1962) (holding former partner was only entitled to expenses "he could substantiate" and approving trial court's order which declined to credit former partner "certain office expenses which the court divided between the partnership and [former partner's] individual law business").

Even if the burden were not on the party seeking "reasonable compensation" or reimbursement of expenses, Defendants have exclusive knowledge of what percentage of their hourly rates are attributable to different overhead expense items. Under California law, "[w]here the evidence necessary to establish a fact essential to a claim lies peculiarly within the knowledge and competence of one of the parties, that party has the burden of going forward with the evidence on the issue although it is not the party asserting the claim." *Sanchez v. Unemployment Ins. Appeals Bd.*, 20 Cal. 3d 55, 71 (1977); *cf., Gough v. Titus (In re Christian & Porter Aluminum Co.)*, 584 F.2d 326, 339 (9th Cir. 1978) ("The burden of proof is clearly on the fraudulent grantee to establish the amount of assets transferred, if the assets are entirely under

-19-

its control and unavailable to the Trustee.").[14]

Finally, the "reasonable compensation" defense under RUPA is not unlike the assertion of a lien by a subsequent transferee under 11 U.S.C. § 550(e) for the lesser of the cost of improvements on the transferred property or any increase in the value of such property. In either case, the transferee bears the burden of establishing the defense. *Sanders v. Hang (In re Hang)*, 2007 WL 2344958 (Bankr. E.D. Cal. 2007), cited in *Kaler v. Slominski (In re Keeley and Grabanski Land P'ship)*, 2013 WL 5535490 (Bankr. D. N.D. 2013). Similarly, Defendants, the subsequent transferees here, have the burden of proving their "reasonable compensation" offset.

**G.  Evidentiary Objections**

Heller has objected to certain evidence presented by Orrick and Jones Day, and those two defendants have objected to certain of Heller's evidence. For purposes of the present motions only, the rulings on the evidentiary objections follow.

Turning first to the expert reports, the court notes that in Heller's opposition to Orrick's objections it states that:

> Plaintiffs' (sic) expert reports are merely one part of a <u>mountain of evidence giving rise to triable issues of fact</u> concerning Orrick's fundamentally flawed showing.

Docket No. 294 at 1:22-23 (emphasis added.

This proves the point why the court is denying Heller's

_____

[14] This doctrine (that the party with control of information has the burden of going forward with the evidence) cuts both ways, however. As discussed in the previous section, as a matter of law and equity, both equitable and legal precepts limit Heller's recovery to amounts it would have realized as net profits had it completed the work. Heller has the information regarding the its billing rates and its profit margin after deducting overhead and other costs.

-20-

motions and the cross-motions.  "A mountain of evidence giving rise to triable issues of fact" is perhaps an understatement on this record.

Heller argues that no ruling is necessary on the objection to its experts reports because Orrick, like the other Defendants, has not carried it burden of proof.  As noted previously, the court is rejecting Heller's theory that it is entitled to summary judgment as a matter of law.  Even if Heller's experts reports are considered, they are not sufficient to have the court rule in Heller's favor at this point as a matter of law.

Because the court is denying Heller's motions and Orrick and Jones Day's cross-motions, and because the trier of fact will need the benefit of sophisticated expert testimony to assist it in finding the amount of profits realized by Defendants on Unfinished Business, the court will decline to rule on the objections to all of the experts' reports.

Orrick objects to Exhibit C to Heller's Request For Judicial Notice (Docket No. 277).  It also objects to Exhibits 10 and 13-20 and paragraphs 26 and 28 of the Supplemental Declaration of Christopher Sullivan.  The court sustains Orrick's objections in both instances because the information set forth in those documents is irrelevant.

Heller objects to declarations of three witnesses and the two experts reports offered by Orrick.  The court sustains the objection to the declarations because they are irrelevant to the issue before the court.  It declines to rule on the objections regarding the two experts reports for the reasons stated above.

Heller objects to Jones Day's deposition testimony of

-21-

Jonathan Hayden, Peter Benvenutti, Joe Sims, Michael Burkart, Carl Goldfischer and Reuben Leibowitz and Exhibits 8 & 13 to the Agenbroad Declaration. Those objections are sustained as the testimony and interrogatory responses are offered in support of the wrong legal standard as explained previously in this Memorandum Decision.

Jones Day objects to various items, including several exhibits to Heller's counsel's declaration and to Heller's two experts reports. The court declines to rule on the objections to those reports for the reasons stated above. As far as the objections to the documents accompanying Heller's counsel's declaration, the court rules as follows:

| Evidence Objected To (Sullivan Declaration): | Ruling |
|---|---|
| Exhibit 28 | Overruled |
| Exhibit 20 | Sustained |
| Exhibit 25 | Sustained |
| Exhibit 2 | Sustained |
| Exhibits 8-19 | Sustained |
| Exhibit 21 | Sustained |
| Exhibit 34 | Sustained |
| Exhibit 3 | Decline to rule for reasons stated above. |
| Exhibit 3 | Decline to rule for reasons stated above. |
| Exhibit 5 | Decline to rule for reasons stated above. |
| Exhibit 37 | Decline to rule for reasons stated above. |
| Exhibit 6 | Decline to rule for reasons stated above. |

Case: 10-03221   Doc# 286   Filed: 01/28/14   Entered: 01/29/14 09:45:52   Page 22 of 24

| Evidence Objected To (Sullivan Supplemental Declaration): | |
|---|---|
| Exhibits 2-10 | Sustained |
| Exhibit 11 | Sustained |
| Exhibit 12 | Sustained |
| Exhibit 13 | Sustained |
| Exhibit 14 | Sustained |

III.  CONCLUSION

For the reasons stated above, Heller's motions and Jones Day's and Orrick's Cross-Motions will be denied.  Counsel for Heller should circulate and up-load proposed forms of order denying those motions for the reasons stated in this Memorandum Decision.

Heller still contends that Defendants other than Jones Day have no right to trial by jury.  Those three Defendants disagree. If Heller wishes to press that issue, then the court must decide the question and if the outcome is adverse to Heller, make a recommendation to the district court to withdraw the reference so that Defendants Orrick, Foley and Davis may proceed to a jury trial.  At the same time Jones Day may wish to have the district court try the adversary proceeding against it at the same time.

To that end the court will hold a status conference on February 13, 2014, at 1:30 p.m. to determine whether and when to take additional briefing on the remaining pretrial issues as to three of the Defendants and to hear from all counsel concerning the steps that should be taken next so that this long running litigation may be concluded.

-23-

Counsel are directed to meet and confer prior to the hearing and to submit a joint status conference statement at least five days prior to the hearing.

**END OF MEMORANDUM DECISION**